IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COREY HOOVER, for
SHERI LYNN HOOVER, deceased,

Plaintiff,

v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,[1]

Defendant.

: Civil No. 1:23-CV-1871
:
:
:
:
:
:
:
: (Chief Magistrate Judge Bloom)
:
:
:
:

## MEMORANDUM OPINION

## I. Introduction

On October 24, 2020, Sheri Hoover filed an application for disability and disability insurance benefits under Title II of the Social Security Act. A hearing was held before an Administrative Law Judge ("ALJ"), who found that Hoover was not disabled from her alleged onset date, October 20, 2020, to August 3, 2022, the date the ALJ issued his decision.

---

[1] Carolyn Colvin became the Acting Commissioner of the Social Security Administration on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn Colvin is substituted for Martin O'Malley as the defendant in this suit.

Hoover[2] now appeals this decision, arguing that the decision is not supported by substantial evidence. After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

On October 24, 2020, Hoover applied for disability and disability insurance benefits, alleging disability due to gastrointestinal issues, bulging discs, arthritis, and anxiety.  (Tr. 62). Hoover was 52 years old on her alleged onset date of disability, had at least a high school education, and had past work as a sales representative and a building service manager. (Tr. 31, 61).

The medical records[3] underlying Hoover's appeal revealed that Hoover underwent a mental status evaluation in connection with her

---

[2] Corey Hoover, Sheri's spouse, took over the appeal after Sheri's passing in November of 2022. (Doc. 7 at 3).

[3] We limit our discussion of the medical records to records involving Hoover's mental health impairments because, as we will discuss, we are remanding this matter due to the ALJ's failure to adequately explain the omission of certain mental limitations in the RFC determination.

disability application on May 10, 2021, with Dr. John Kajic, Psy.D. (Tr. 489-532). Dr. Kajic noted that Hoover had just started outpatient psychiatric treatment and was going five days per week. (Tr. 491). Hoover reported panic attacks, concentration difficulties, excessive worrying, irritability, and fatigue in conjunction with her depression and anxiety. (Tr. 492). A mental status examination revealed an anxious mood, coherent and goal directed thought processes, intact attention and concentration, and intact recent and remote memory. (Tr. 493-94). Hoover reported being able to engage in personal care, make simple meals, clean, shop, and do laundry. (Tr. 494). Dr. Kajic opined that Hoover had a mild limitation in her ability to make judgments on complex work-related decisions, as well as mild limitations in interacting with others. (Tr. 496-97).

In October of 2021, Hoover was hospitalized following an incident in which she overdosed on Ambien, had access to a gun, and threatened suicide. (Tr. 641). She then began a partial treatment program at Pennsylvania Psychiatric Institute ("PPI"). (*Id.*). It was noted that Hoover had feelings of hopelessness and worthlessness, trouble sleeping,

and poor concentration. (*Id.*). A mental status examination at her initial intake revealed a depressed and anxious mood, dysphoric affect, normal thought content, impaired attention and concentration, and fair insight and judgment. (Tr. 647). Treatment notes from November indicate that Hoover continued to suffer from decreased concentration, depression, sleep disturbance, and stress, and she exhibited impaired attention and concentration on examination. (Tr. 655-56, 658). Her medication compliance was noted to be "fair," and the treatment notes indicate that she took a double dose of her medication to help her with sleep. (Tr. 656, 658).

Around this time, Hoover underwent a consultative examination with Dr. Kathleen Ledermann, Psy.D. (Tr. 686-93). Dr. Ledermann noted Hoover's October 2021 hospitalization, and that she was currently participating in a partial hospitalization program. (Tr. 686). Hoover reported difficulties with sleep, excessive worry, memory, and concentration. (Tr. 687). On examination, Hoover was cooperative and reported an anxious mood; her attention and concentration were intact; her memory skills were impaired; and her insight and judgment were

good. (Tr. 688-89). She reported an ability to engage in personal care, cook simple meals, and clean, and that she was unable to shop, manage money, or lift heavy things. (Tr. 689). Dr. Ledermann opined that Hoover had moderate limitations in her ability to understand or carry out complex instructions and moderate to marked limitations in her ability to make judgments on complex work-related decisions, citing Hoover's memory and concentration difficulties, and mild limitations in interacting with others. (Tr. 691-92).

Hoover continued to treat at PPI for outpatient therapy. (Tr. 786). Treatment notes from December of 2021 indicate that Hoover was experiencing worsening insomnia following her hospitalization, as well as impaired concentration. (Tr. 786-87). A mental status examination revealed a depressed and anxious mood, intact attention, impaired concentration, and fair insight and judgment. (Tr. 788). She was placed on a medication management regimen and scheduled to follow up in one month. (Tr. 790). Treatment notes from February of 2022 indicate that Hoover continued to complain of concentration issues, although her mental status examination revealed intact concentration and attention,

as well as fair insight and judgment. (Tr. 792, 795-96). Hoover was ultimately discharged from PPI in April of 2022 at which time it was noted that she had "disengaged from treatment." (Tr. 803-04),

It was against the backdrop of this evidence that the ALJ conducted a hearing on July 13, 2022, during which Hoover and a Vocational Expert testified. (Tr. 37-60). Following the hearing, on August 3, 2022, the ALJ issued a decision denying Hoover's application for benefits. (Tr. 16-36). At Step 1 of the of the sequential analysis that governs Social Security cases, the ALJ concluded that Hoover did not engage in substantial gainful activity between October 20, 2020—the alleged onset date of disability—and the date the decision was issued. (Tr. 21). At Step 2, the ALJ found that Hoover suffered from the following severe impairments: degenerative disc disease, depression, and anxiety. (*Id.*). At Step 3, the ALJ concluded that none of Hoover's severe impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 22-23). The ALJ found that Hoover had moderate limitations in the four broad areas of mental functioning. (*Id.*).

Between Steps 3 and 4, the ALJ concluded that Hoover:

> [H]a[d] the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) except occasional postural
> movements and work that is limited to simple and routine
> tasks, involving only simple, work-related decisions, and with
> few, if any, work place changes, no production pace work, and
> only occasional interaction with supervisors, coworkers, and
> the public.

(Tr. 23).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Hoover's reported symptoms. (Tr. 24-30). With respect to the medical opinion evidence regarding Hoover's mental impairments, the ALJ considered four medical opinions—those of Dr. Kajic and Dr. Ledermann, as well as the state agency consulting sources, Dr. Small and Dr. Jonas. The ALJ found Dr. Small's June 2021 opinion partially persuasive, in that the opinion—which found that Hoover was mildly limited in three of the four areas of mental functioning—was consistent with Hoover's presentation at the time the opinion was rendered. (Tr. 29). However, the ALJ noted that the medical evidence showed a worsening of Hoover's condition following Dr. Small's assessment. (*Id.*). The ALJ also found Dr. Ledermann's opinion partially persuasive, concluding that this opinion

7

indicated that Hoover could perform work within the RFC and noting that Dr. Ledermann's examination revealed impaired memory but otherwise normal mental status findings. (*Id.*). With respect to Dr. Kajic's opinion, the ALJ found that this opinion was supported by Hoover's presentation at that examination, but the ALJ ultimately found Hoover more limited than Dr. Kajic opined.[4] (Tr. 28-29).

The ALJ found Dr. Jonas' November 2021 opinion persuasive. (Tr. 29-30). Dr. Jonas examined the record on reconsideration and found that Hoover had understanding and memory limitations, in that she was moderately limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 96-97). Dr. Jonas opined that Hoover was able to carry out short, simple instructions and perform simple task-related decisions. (Tr. 100). He further found that Hoover was not precluded from

---

[4] The plaintiff also argues that the ALJ erred in assigning this opinion "partial weight" rather than a degree of persuasiveness in accordance with the post-March 2017 regulations. While we ultimately do not reach the merits of this argument, as we are remanding this matter on a different issue, we note that it appears the ALJ considered the supportability and consistency of this opinion with the medical evidence despite using the word "weight" rather than "persuasive."

meeting the basic demands of simple routine tasks on a sustained basis. (*Id.*).

The ALJ reasoned that Dr. Jonas' opinion was "fully supported" by his review of the medical records, and that it was consistent with additional evidence received at the hearing. (*Id.*). Specifically, the ALJ noted that Dr. Jonas opined that Hoover had a moderate limitation in her ability to understand, remember, and carry out detailed instructions, and that she was able to carry out short, simple instructions and make simple, task-related decisions. (Tr. 29).

The ALJ also considered Hoover's symptoms, but ultimately found that the statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 20-22). In making this determination, the ALJ considered Hoover's adult function report, as well as her hearing testimony, in which she reported memory and concentration difficulties. (Tr. 270). The ALJ noted that Hoover reported no issues with following spoken and written instructions, and that she was found to present with intact memory and concentration at her May and November 2021 consultative examinations,

despite complaining of memory and concentration difficulties. (Tr. 22-23, 25).

Having made these findings, at Step 4 the ALJ found that Hoover could not perform her past work but found at Step 5 that Hoover could perform jobs in the national economy, such as a classifier, laundry; a marker; and a mail clerk, non-postal. (Tr. 31-32). Accordingly, the ALJ found that Hoover had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 32).

This appeal followed. On appeal, Hoover argues that the ALJ erred in his consideration of the opinion evidence and failed to include adequate mental limitations in the RFC—specifically, a limitation to short, simple instructions. After consideration, we conclude that the ALJ's opinion is not supported by substantial evidence. Accordingly, we will remand this matter to the Commissioner for further consideration.

## III.  <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of This Court</u>

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final

decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime*

11

*Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether Hoover is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the

correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot reweigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory

13

explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

14

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether Hoover: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine Hoover' residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all Hoover' medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of the analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that

15

determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

Hoover bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that Hoover can perform consistent with Hoover' RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible

16

medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record,

whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in October of 2020 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and

supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. The ALJ's Decision is Not Supported by Substantial Evidence.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Here, Hoover contends that the ALJ erred in failing to include a limitation in the RFC to "short, simple instructions" despite finding the opinion of Dr. Jonas persuasive. Instead, the RFC limited Hoover to "work that is limited to simple and routine tasks, involving only simple, work-related decisions[.]" (Tr. 23). While we believe this to be a close case, we conclude that the ALJ's failure to explain the omission of "short, simple instructions" from the RFC determination warrants a remand.

While an ALJ is not required to accept every limitation set forth in an opinion that is found to be persuasive, the decision must adequately explain the rationale behind the RFC determination. *Durden*, 191 F. Supp. 3d at 455. Here, the ALJ found Dr. Jonas' opinion persuasive. The ALJ specifically noted Dr. Jonas' findings that Hoover could carry out short, simple instructions, and that she was moderately limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 29-30). The ALJ determined that Dr. Jonas' opinion was "fully supported" by his review of the claimant's record. (*Id.*). However, the ALJ failed to include a limitation to short, simple instructions in the RFC, instead limiting Hoover to simple, routine tasks and simple work-related decisions.

In our view, the ALJ's decision is not supported by substantial evidence. In making this finding, we are persuaded by at least one case in this circuit that considered this same issue. In *Cowher v. O'Malley*, 2024 WL 3161865 (W.D. Pa. June 24, 2024), the court considered a similar argument by the plaintiff. In that case, the ALJ found persuasive two opinions that limited the plaintiff to "very short and simple

instructions," but failed to include such a limitation in the RFC, instead limiting the plaintiff only to "simple instructions." *Id.* at *7. The court first noted that "a difference exists between an individual capable of following 'simple instructions,' and an individual only capable of following 'very short and simple instructions (i.e., perform one and two step tasks)[.]'" *Id.* (citations to the record omitted). The court then considered how the Dictionary of Occupation Titles ("DOT") defines the different "reasoning development" levels associated with certain occupations: "Jobs at Reasoning Development Level 1 ('R1') require an employee to '[a]pply commonsense understanding to carry out *simple one- or two-step instructions*[,]' while Jobs at Reasoning Development Level 2 ('R2') require the ability to '[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*[.]'" *Id.* (citing Appendix C – Components of the Definition Trailer, 1991 WL 688702 (emphasis in original)).

The *Cowher* court went on to conclude that a limitation to "very short and simple instructions" was likely inconsistent with reasoning level 2 occupations. *Cowher*, 2024 WL 3161865 at* 7. The court further

concluded that the ALJ failed to adequately explain the omission of such a limitation despite finding the opinions setting forth such a limitation persuasive, finding that the ALJ never addressed his decision to limit the plaintiff to only "simple" instructions, nor explained his rejection of the more restrictive limitation to "very short and simple instructions." *Id.* at *8. However, in that case, the court ultimately found that this error was harmless, as the ALJ identified at least one occupation at Step 5 with a reasoning level 1 that the plaintiff could perform. *Id.* at *9-10.

Here, we similarly find that the ALJ's omission of the limitation to "short, simple instructions" was not adequately explained in the decision. This is particularly so where the ALJ found Dr. Jonas' opinion setting forth this limitation persuasive and fully supported by Dr. Jonas' review of the record. Despite finding this opinion persuasive, the ALJ failed to explain why he rejected the limitation to "short, simple instructions" and instead limited Hoover to "work that is limited to simple and routine tasks, involving only simple, work-related decisions." (Tr. 23). As we have noted, while the ALJ is not required to accept every limitation set forth in an opinion he finds persuasive, he must at a minimum explain the

23

rationale behind the RFC determination. *Durden*, 191 F. Supp. 3d at 455. Further, the ALJ may not "reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Here, we conclude that the ALJ's omission of the "short, simple instructions" limitation was not adequately explained in the decision, and therefore, is not supported by substantial evidence.

We further conclude that this error is not harmless. Social Security appeals are subject to harmless error analysis. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ." *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014). In this case, the ALJ's decision at Step 5 identified three jobs that Hoover could perform—classifier, laundry, which requires reasoning level 2 (DOT 361.687-014, 1991 WL 672991); marker, which requires reasoning level 2 (DOT 209.587-034, 1991 WL 671802); and mail clerk, non-postal, which requires reasoning level 3 (DOT 209.687-026, 1991 WL 671813). As discussed in *Cowher*, as well as in several other cases we find

persuasive, a limitation to short, simple instructions can (but does not always) preclude jobs requiring reasoning level 2, as such jobs require that an individual be able to carry out "detailed but uninvolved written or oral instructions." *See Cowher*, 2024 WL 3161865, at *9-10; *see also Leach v. Kijakazi*, 70 F.4th 1251, (9th Cir. 2023) ("A level-two job with 'detailed but uninvolved ... instructions' could require an employee to follow lengthy simple instructions. On the present record, then, we cannot determine whether the level-two jobs identified by the vocational expert require only short, simple instructions."); *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019) ("We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.").

Here, the jobs identified by the ALJ at Step 5 require a reasoning level 2 or 3, which could be inconsistent with a limitation to short, simple instructions. Further, we have concluded that the ALJ did not adequately explain the omission of the short, simple instructions limitation. Accordingly, given that such a limitation could preclude the jobs

25

identified by the ALJ at Step 5, we find that the failure to explain this omission is not harmless and requires a remand.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.


_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge


Date: January 6, 2025

26